UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| GAIL C. DERFLER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-1469-NAB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The following opinion is intended to be the opinion of the Court judicially reviewing the denial of Gail C. Derfler's ("Derfler") application for disability insurance benefits and supplemental security income ("SSI") under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 6.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. The Court heard oral argument on the pleadings of the parties on July 22, 2014. The Court now issues its ruling in this opinion. Because the Court finds that the decision denying benefits is not supported by substantial evidence, the Court will reverse and remand the decision to the Commissioner.

**I.    Issues for Review**

Derfler asserts three errors for review. First, Derfler contends that the administrative law judge ("ALJ") improperly failed to give controlling weight to the opinions of her treating physicians. Second, she asserts that the ALJ failed to properly evaluate her credibility. Finally,

she contends the ALJ relied on flawed vocational expert testimony when determining her disability status.

## II. Standard of Review

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

**III.    Discussion**

Derfler alleges disability due to a cervical graft, lumbar pain, depression, and bi-polar disorder. (Tr. 146.) The ALJ found that Derfler had the severe impairments of degenerative disc disease, congenital spinal stenosis, and myelopathy of the cervical spine, status post-surgical fusion; degenerative joint disease and degenerative disc disease of the lumbar spine, with associated radiculopathy; hereditary spastic paraplegia; obesity; bi-polar affective disorder, alternately diagnosed as cyclothymia; and anxiety disorder. (Tr. 423.)

The residual functional capacity ("RFC") is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s),

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The ALJ found that Derfler had the residual functional capacity to perform light work with the limitation that she can understand, remember, and carry out simple instructions and non-detailed tasks.

### Treating Physicians' Opinion Evidence

Derfler asserts that the ALJ erred in failing to give controlling weight to the opinions of her treating physicians, psychiatrists Dr. Rashmi Nakra and Dr. Layla Ziaee, and primary care physician Dr. Mark Gregory. The ALJ gave little weight to the doctors' opinions.

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-2p; *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if [the conclusions] are inconsistent with the record as a whole." *Id.*

#### 1. Dr. Ziaee

Based upon the Court's review of the administrative record, the Court finds that the ALJ erred in failing to give controlling weight to Derfler's treating psychiatrist, Dr. Layla Ziaee. Dr. Ziaee has treated Derfler since September 17, 2008. (Tr. 776-777.) At her initial visit, Derfler reported that she had been without medication for three months and reported loss of temper, obsessive thoughts, lack of sleep, and anxiety. (Tr. 776.) Dr. Ziaee diagnosed Derfler with cyclothymia[2] and prescribed Trazodone and Lamictal. (Tr. 777.) Dr. Ziaee found that Derfler had a global assessment functioning score[3] ("GAF") of 45. (Tr. 777.) A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning[4]. Derfler continued treatment through July 2011. Dr. Ziaee's treatment notes indicate that Derfler reported generally "doing fine" and her mood was "good overall" on a few occasions. (Tr. 773-775, 935, 937, 939.) Derfler also reported frustration, social isolation, anxiety, and some sleep problems. (Tr. 774, 934, 936, 938.) Dr. Ziaee noted that Derfler's goals during treatment included maintain mood symptoms, improve anxiety, and improve and stabilize mood and anxiety symptoms. (Tr. 773-777, 934-940.)

On January 9, 2012, Dr. Ziaee completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 912-919.) In her opinion, Dr. Ziaee stated that Derfler was diagnosed with cyclothymia and her prognosis was fair. (Tr. 912.) Dr. Ziaee noted that she treated Derfler every 3-6 months. The positive clinical findings supporting her diagnosis included sleep disturbance, mood disturbance, emotional lability, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, and difficulty thinking or concentrating. (Tr. 913.)

---

[2] Cyclothymic disorder is a "chronic, fluctuating mood disturbance involving numerous periods of hypomanic symptoms and periods of depressive symptoms that are distinct from each other." Diagnostic and Statistical Manual of Mental Disorders 140 (5th ed. 2013) ("DSM-V").
[3] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR").
[4] DSM-IV-TR at 34.

Derfler's primary symptoms were mood swings, problems sleeping, sadness, and decrease[d] concentration. (Tr. 914.) Dr. Ziaee opined that Derfler's current GAF score was 65 and her lowest score in the previous year was 60. (Tr. 912.) A GAF score of 65 indicates mild symptoms or some difficulty in social, occupational, or school functioning[5]. A GAF score of 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.[6]

Dr. Ziaee opined that Derfler was moderate[ly] socially limited. (Tr. 912.) She also opined that Derfler was moderately limited[7] in the ability to remember locations and work-like procedures; understand, remember, and carry out one or two step instructions; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual; sustain ordinary routine without supervision; and work in coordination with or in proximity to others without being distracted by them. (Tr. 915.) Dr. Ziaee also found Derfler moderately limited in the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public, ask simple questions or request assistance; respond appropriately to changes in the work setting; and set realistic goals or make plans independently. (Tr. 916-917.) She determined that Derfler was mildly[8] limited in the ability to make simple work related decisions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and ability to maintain socially appropriate behavior and to

---

[5] DSM-IV-TR 34.
[6] *Id.*
[7] In the questionnaire, moderately limited was defined as "significantly affects, but does not totally preclude the individual's ability to perform the activity." (Tr. 914.)
[8] Mildly limited was defined as "not significantly affecting the individual's ability to perform the activity." (Tr. 914.)

adhere to basic standards of neatness and cleanliness. (Tr. 916.) Dr. Ziaee also found that Derfler was markedly[9] limited in the ability to be aware of normal hazards and take appropriate precautions and the ability to travel to unfamiliar places or use public transportation. (Tr. 917.) Dr. Ziaee indicated that Derfler was not a malingerer and was capable of tolerating low work stress. (Tr. 918.) She also indicated that Derfler would have good days and bad days and would likely be absent more than three times a month as a result of impairments or illness. (Tr. 919.)

The ALJ gave little weight to Dr. Ziaee's opinion in determining Derfler's RFC. (Tr. 431-432.) The ALJ stated that Dr. Ziaee's limitations are much more restrictive than alleged by the claimant and was inconsistent internally, with her treatment notes, and Derfler's activities of daily living. (Tr. 432.) Based on the following, the Court finds that the ALJ should have given controlling weight to Dr. Ziaee's opinion. First, Dr. Ziaee's opinion was consistent with her treatment notes. Dr. Ziaee found Derfler moderately limited in most mental work related activities and mildly or markedly limited in a few activities. (Tr. 915-917.) Her treatment notes indicate that although Derfler reported generally being "good" overall, she also reported being emotional, suffering anxiety and nervous symptoms, increased depression, and frustration. (Tr. 773-777, 936, 938.) Dr. Ziaee also observed tangential thoughts and dysthymic affect. (Tr. 777, 936.) Derfler reported that she could not work due mostly to her physical disability, but that does not discount that her mental impairments could affect her ability to work, especially in combination with her physical ailments. (Tr. 937.) "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001).

---

[9] Markedly limited was defined as "effectively precludes the individual from performing the activity in a meaningful manner." (Tr. 914.)

7

Second, Dr. Ziaee's opinion was not internally inconsistent. Although at the time of the opinion, Dr. Ziaee gave Derfler a current GAF score of 65, which indicates mild symptoms, she also noted that Derfler's lowest GAF score the past year, indicated moderate symptoms consistent with her opinion. There is no inconsistency between her findings in the questionnaire and the fact that at the time it was completed, Derfler's GAF score was relatively "high." "It is inherent in psychotic illnesses that periods of remission will occur, and such remission does not mean that the disability has ceased. Indeed, one characteristic of mental illness is the presence of occasional symptom-free periods." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal citations omitted). "Although the mere existence of symptom free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim." *Id.* "Unlike many physical impairments, it is extremely difficult to predict the course of mental illness. Symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." *Id.* Dr. Ziaee's opinion of mostly moderate limitations is consistent with her treatment notes, which show moderate symptoms through most of her treatment. The ALJ erred in discounting Dr. Ziaee's opinion regarding the severity of Derfler's mental limitations on the basis of one "high" GAF score when the treatment notes evaluated over time showed consistently moderate limitations not inconsistent with the opinion. *See Whitehead v. Colvin*, No. 4:12-CV-1259 CDP, 2013 WL 3388917 at *13 (E.D. Mo. July 8, 2013) (ALJ erred in discounting treating physician's opinion where at the time of the opinion, the claimant's GAF score was at its highest and treatment notes showed cyclical depression).

Third, Dr. Ziaee's opinion was not inconsistent with Derfler's testimony or work activity. The ALJ found that Dr. Ziaee's limitations are much more restrictive than are alleged by the

claimant. The exhibits cited by the ALJ do not fully support that conclusion. In Derfler's undated disability report, Derfler does not provide any information regarding getting along with others or her ability to understand, remember, or carry out simple instructions. (Tr. 145-153.) In her hearing testimony on February 14, 2008, Derfler testified, "I get along great with other people, except I'm not around a lot of people. I think I'm too opinionated, and I don't like large groups of people, so I only have a couple of friends." (Tr. 46.) Derfler also testified, "It's my attention span's pretty short. It's hard to stay focused, but – my memory's not great. … I have a short term memory that's good." (Tr. 47.) She also stated that she had "two people helping [her]" with her classes. (Tr. 47.) Derfler testified that her mental condition is mostly in a depressive state and she has ups and downs. (Tr. 522-526.)

The ALJ also cited work history reports completed by Derfler that indicate that she held several jobs during the period of disability. (Tr. 750-757, 764-771.) The ALJ stated that these multiple temporary jobs, including working for the Census Bureau and a coffee distributing business suggest she is not as limited as Dr. Ziaee's opinion suggests. (Tr. 433.) Upon review of Derfler's testimony and the work history reports, the Court does not find that they were inconsistent with Dr. Ziaee's opinion. Derfler worked at the temporary jobs for a few weeks each before quitting because she states she was unable to work due to pain and inability to complete tasks. (Tr. 508-513, 754-755, 764-766.) Derfler also noted that during the census job she was allowed to work anytime that she wanted, she worked an hour at a time with breaks in between, and her supervisors helped her with her job. (Tr. 510, 754.) Derfler resigned from the coffee distributorship, because she lacked the motivation to go to businesses to introduce the products, make calls, and follow-up with potential buyers. (Tr. 769.) Derfler's need for accommodations and inability to maintain full-time employment at these jobs supports Derfler's

9

assertion that her impairments affected her ability to perform the required work-related activities on a regular and continuing basis. *See Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998) (claimant's continued employment only through good graces and accommodations of employer served to corroborate her testimony regarding pain and fatigue). The evidence cited by the ALJ is not inconsistent with Dr. Ziaee's opinion. Based on the foregoing, the Court finds that the ALJ should have given controlling weight to Dr. Ziaee's opinion.

### 2. Dr. Nakra

Next, Derfler contends that the ALJ should have given controlling weight to Dr. Rashmi Nakra, Derfler's other treating psychiatrist. The medical records indicate that Dr. Nakra treated Derfler between 2002 and 2007. (Tr. 259-280, 348-375, 379-384.) On May 1, 2007, Dr. Nakra completed a psychiatric and psychological impairment questionnaire regarding Derfler. (Tr. 297-304.) Dr. Nakra diagnosed Derfler with bi-polar affective disorder, bi-polar II, major depressive episode[10]. (Tr. 297.) Dr. Nakra assessed Derfler's current GAF as 45 and her highest the previous year as between 40-46. (Tr. 297.) The positive clinical findings supporting her diagnosis included sleep disturbance, mood disturbance, emotional lability, psychomotor agitation, feelings of guilt/worthlessness, difficulty thinking or concentrating, decreased energy, and hostility and irritability. (Tr. 298.) Dr. Nakra opined that Derfler was markedly limited in the ability to remember locations and work-like procedures; understand, remember, and carry detailed instructions; carry out one or two-step instructions; maintain attention and concentration for extended periods; perform activities within a schedule maintain regular attendance, and be punctual; sustain ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; complete

---

[10] Bi-polar II disorder is characterized by a clinical course of recurring mood episodes consisting of one or more major depressive episodes and at least one hypomanic episode. (DSM-V at 135.)

a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 300-301.) Dr. Nakra also found Derfler markedly limited in the ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and travel to unfamiliar places or use public transportation. (Tr. 301-302.) Dr. Nakra also opined that Derfler was moderately limited in her ability to understand and remember one or two step instructions; make simple work related decisions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently. (Tr. 300-302.) Dr. Nakra noted that Derfler was incapable of tolerating even "low stress" work and was not a malingerer. (Tr. 303.) Dr. Nakra found that Derfler's psychiatric condition exacerbated her pain and spinal stenosis. (Tr. 303.) She also noted that Derfler's impairments would last at least 12 months and that the impairments would likely produce "good" and "bad" days. (Tr. 303.)

The Court notes that the ALJ and the parties have acknowledged that Dr. Nakra's handwritten notes are substantially illegible[11]. In this case, the ALJ mentions that the notes are illegible, but then repeatedly cites to the same notes to support her opinion that Dr. Nakra's opinion was inconsistent with and unsupported by her own treatment notes and in evaluating Derfler's RFC. (Tr. 432.) The ALJ cannot rely upon indecipherable treatment notes in support of her determination that Dr. Nakra's notes are internally inconsistent and inconsistent with her

---

[11] The Court notes that Dr. Nakra's notes are completely handwritten. This is not a case where only a few lines were indecipherable or the doctor had a form checklist with added handwritten comments.

medical opinion. "[I]llegibility of important evidentiary material can warrant a remand for clarification and supplementation." *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990). The Commissioner contends that "much of Dr. Nakra's handwritten notes are illegible, but her legible handwritten notes indicate that Plaintiff's mental impairments were well-controlled with medication and did not support Dr. Nakra's opinion of marked limitations." While the Commissioner is able to decipher phrases out of Dr. Nakra's notes that favor the Commissioner's position, a review of all of Dr. Nakra's notes indicate that they are substantially illegible. Selective phrases from five years of medical records cannot constitute substantial evidence. Therefore, it was improper for the ALJ to rely on Dr. Nakra's treatment notes to discount Dr. Nakra's opinion or discount Derfler's credibility.

This is the second time that Derfler's disability claim has come before this Court. *See Derfler v. Astrue*, 4:10-CV-203 AGF (E.D. Mo. Mar. 28 2011.) In the previous opinion, the Court remanded the action to the Commissioner due to the illegibility of Dr. Nakra's notes and the failure of the ALJ to provide reasons for the weight given to Dr. Nakra's opinion. (Tr. 447, 474-480.) The court noted that there was no other mental health evidence in the record, therefore there was no other evidence providing a sufficient basis for the ALJ's decision. (Tr. 478-479.) After the ALJ issued her initial decision, but before the case was remanded, Dr. Nakra retired. (Tr. 777.) Dr. Nakra is presumably not available now to provide a transcription of the treatment notes. The notes did not suddenly become legible after remand.

"[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). In this case, the ALJ discounted both of Derfler's treating psychiatrists without any contradictory mental health evidence in the record. Taken together, Dr. Nakra and Dr. Ziaee's medical opinions are

12

consistent with the mental health evidence in the record. Dr. Nakra's May 2007 opinion indicated substantial limitations and serious impairment and it was consistent with Dr. Ziaee's initial consultation with Derfler a year later in September 2008, which also indicated Derfler suffered from a serious impairment in social, occupational, or school functioning (Tr. 297, 777.). Dr. Ziaee's treatment notes and opinion indicate that Derfler's symptoms have improved since September 2008, but she still has moderate and marked limitations in some areas. The Court finds that the ALJ erred in assessing no weight to Dr. Nakra's opinion when there was no other contradictory medical evidence in the record. Dr. Nakra's opinion should have been given some weight.

The Court notes that after the first remand, the ALJ had the option and duty to order a consultative mental examination for Derfler. There is no bright line test for determining when the Commissioner has failed to develop the record and the determination is made on a case by case basis. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (internal citation omitted). In some case, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. §§ 404.1519a(b), 416.1519a(b). Without Dr. Nakra and Dr. Ziaee's opinions or a consultative examination, there was very little medical evidence in the record regarding Derfler's mental health.[12]

The Commissioner contends that Derfler was scheduled for a consultative examination, but she did not attend, thus inferring the ALJ was not obligated to schedule another one. The Commissioner's position is insufficient. On June 9, 2006, the Commissioner denied Derfler's

---

[12] Derfler's other physicians, who treated her physical impairments, mentioned her mental impairments and psychotropic medications in other parts of the medical record.

claim because "medical evidence shows additional information was needed to evaluate the severity of the impairments." (Tr. 72.) The Commissioner noted that an examination was set up, but the appointment was not kept and efforts to obtain Derfler's cooperation were unsuccessful. (Tr. 72.) Social Security regulations requires that claimants appear at consultative examinations or provide a good reason for failure to do. 20 C.F.R. §§ 404.1518, 416.918. Good reasons for failure to appear at a consultative examination include illness on the date of the scheduled examination, not receiving timely notice or any notice of the examination, being furnished incorrect or incomplete information, or having had a death or serious illness occur in the claimant's immediate family. 20 C.F.R. §§ 404.1518(b), 416.918(b).

The ALJ mentioned Derfler's failure to attend in the ALJ's opinion and stated that "claimant has not shown that she was unable to attend this appointment for any reasons set forth in the regulations." (Tr. 435.) The ALJ's statement is speculative. The ALJ held three hearings in this case and never asked Derfler why she failed to attend the consultative examination. The ALJ also stated that the "failure to cooperate further undermines the claimant's allegations regarding the severity and functional limitations of her impairments." (Tr. 435.) The Court is not stating that a claimant's failure to attend a consultative examination should be without consequence. The regulations clearly state that the Commissioner may find a claimant not disabled if the claimant does not have a good reason for failing or refusing to take part in a consultative examination or test. 20 C.F.R. §§ 404.1518(a), 416.918(a). In this case, however, the ALJ *speculated* that Derfler's reasons for failure to attend the consultative examination failed to meet the regulatory standards outlined in 20 C.F.R. §§ 404.1518(b), 416.918(b). The ALJ cannot speculate that Derfler's reasons, if any, failed to meet the regulatory standard and then use such failure to discredit her. Because the ALJ placed substantial weight on the failure to

attend the consultative examination, the ALJ should have asked Derfler on the record the reasons for her failure to attend rather than speculating. In summary, the ALJ's RFC determination regarding Derfler's mental health impairments was not supported by substantial evidence in the record as a whole.

### 3. Dr. Gregory

Derfler also contends that the ALJ erred in giving little weight to Dr. Mark H. Gregory's opinion. Dr. Gregory has been Derfler's primary care physician since April 8, 1997. (Tr. 921.) Dr. Gregory treated Derfler for a variety a medical ailments during this time period. (Tr. 778-793, 889-910.) On January 18, 2012, Dr. Gregory drafted a statement and completed a multiple impairment questionnaire for Derfler. (Tr. 921-930.) In his statement, Dr. Gregory diagnosed Derfler with hereditary spastic paraplegia and bipolar disorder. (Tr. 921.) He indicated that he reviewed the consultative records sent to him by Dr. Neill Wright and Dr. Stuart Weiss, neurosurgeons, and Dr. Nakra. Dr. Gregory stated that Derfler was basically "wheelchair bound" and her prognosis for recovery is poor, as there is family history of the spastic paraplegia that is progressive. (Tr. 921.) Dr. Gregory opined that Derfler was unable to do any physical labor, and most likely standing for an extensive period of time would be very difficult. (Tr. 921.) Dr. Gregory also noted that although Derfler was a bright woman, "her psychiatric deficits really limit her ability to function in high stress environments." (Tr. 922.)

In the multiple impairment questionnaire, Dr. Gregory stated that Derfler would have a progressive decline in neurologic function and clinical findings supporting his diagnosis include pain, weakness, and double spasticity to lower extremities since he has known her. (Tr. 923.) Dr. Gregory noted that Derfler's pain level was moderate to moderately severe and her fatigue level was moderate. (Tr. 925). He opined that Derfler could sit for three hours and stand or walk

15

for one hour in an eight hour work day on a competitive and sustained basis. (Tr. 925.) Dr. Gregory opined that it was medically recommended or necessary for Derfler to not sit or stand continuously in a work setting. (Tr. 925-926.) Dr. Gregory did not indicate any weight limitations for Derfler. He indicated that she had significant limitations doing repetitive reaching, handling, fingering, or lifting, but in responding to more specific questions indicated that she had moderate limitations in grasping, turning, and twisting objects and using her arms for reaching. (Tr. 926-927.) He also indicated that she had no limitations in using her fingers and hands for fine manipulations. (Tr. 927.) Dr. Gregory conveyed that Derfler's symptoms would likely increase if she were placed in a competitive work environment, but she was capable of low stress jobs. (Tr. 927-928.) Dr. Gregory stated that on average she would likely be absent from work more than 3 times per month as a result of the impairments or treatment. (Tr. 929.)

The ALJ gave little weight to Dr. Gregory's opinion stating it was internally inconsistent and unsupported by other evidence in the record. (Tr. 429-430.) The ALJ cites Dr. Gregory's notation in a single medical record that Derfler reported "swimming a lot" and notes where Derfler reported feeling well to reject Dr. Gregory's opinion. (Tr. 430.) The Court finds that Dr. Gregory's opinion should have been given some weight in accordance with 20 C.F.R. §§ 404.1527(b), 416.927(b). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The Court agrees that Dr. Gregory's opinion that Derfler was wheelchair bound and his opinion regarding her upper extremity limitations were not supported by other evidence in the record. The Court finds, however, that Dr. Gregory's opinion can be given some weight regarding Derfler's spasticity and sitting, standing, and walking requirements. The record is undisputed that claimant has limited range of motion in the lumbar spine, exhibits

16

spastic and sometimes, unsteady and antalgic gait, and walks with a cane or walker. (Tr. 517-521, 802, 805, 812) Although Derfler's condition improved with epidural steroid treatments and a radiofrequency ablation, she still experiences lower back pain. (Tr. 798, 804, 811, 818, 825, 830.) The RFC determination did not address these problems caused by Derfler's impairments. Dr. Gregory's opinion was consistent with Dr. Ziaee's opinion that Derfler could tolerate low stress work and that she would miss work more than three times per month due to the impairments or treatment. (Tr. 918-919, 928-929.) Therefore, Dr. Gregory's opinion was entitled to at least some weight.

      RFC is a medical question. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). It is true that "[a] disability claimant has the burden to establish her RFC." *Id.* (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)). However, the ALJ has an independent duty to develop the record despite the claimant's burden. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). "Some medical evidence must support the determination of the claimant's RFC." *Eichelberger*, 390 F.3d at 591 (citing *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000)) (internal quotation marks omitted). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2003)). An examination of the claimant's ability to function in the workplace includes consideration of a combination of the claimant's mental and physical impairments." *Lauer*, 245 F.3d at 703. Based on a review of the record as a whole, the Court finds that the ALJ should make a new RFC determination regarding Derfler's physical and mental impairments consistent with this opinion.

**IV. Conclusion**

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court has the power to "enter, upon the pleadings and transcript of the record, a judgment, affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. 405(g). When a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings. *Buckner v. Apfel*, 213, F.3d 1006, 1011 (8th Cir. 2000). "Where the total record convincingly establishes disability and further hearing would delay the receipt of benefits, this court has ordered the immediate award of benefits without further delay." *Blakeman v. Asture*, 509 F.3d 878, 890 (8th Cir. 2007). That standard has not been met here, so the Court will remand for further proceedings as outlined below. Because Derfler applied for benefits in 2006 and it is now 2014, the Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Upon remand, the ALJ must make a new RFC determination subject to the following conditions. First, the ALJ shall give controlling weight to Dr. Ziaee's opinion and at least some weight to Dr. Nakra's opinion and Dr. Gregory's opinion that are consistent with the record as noted above. Second, the ALJ cannot discredit Derfler's credibility for failing to attend the consultative examination without further inquiry into the reasons for a failure to attend. Because this action will remanded, the Court will not address the vocational expert testimony issues.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Derfler seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 15.]

**IT IS FURTHER ORDERED** that the Commissioner's decision of March 29, 2012 is **REVERSED** and **REMANDED**.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 6th day of August, 2014.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE